**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ALAN BLECHER,**
    *Plaintiff,*

v.

**NEMO ARMS, INC., KELLY LINK,**
**JEFF SIPE, and WILLIAM "BILL" KING,**
    *Defendants.*
**Civil Action No. 4:26-cv-00047**

### JOINT DISCOVERY/CASE MANAGEMENT PLAN
**UNDER RULE 26(f)**
**FEDERAL RULES OF CIVIL PROCEDURE**

*Please restate the instruction before furnishing the information.*

**1.** *State where and when the meeting of the parties required by Rule 26(f) was held, and identify the counsel who attended for each party.*

Despite Plaintiff's repeated good-faith efforts to conduct a Rule 26(f) conference (see attached Certificate of Conference), the parties were unable to meet. Plaintiff submits this proposed plan pursuant to his obligation under Judge Ho's Procedures § 7.a.1.

**2.** *List the cases related to this one that are pending in any state or federal court with the case number and court.*

No related cases are pending in any state or federal court. Plaintiff notes that USPTO Application Serial No. 99/599,272 (MONGOOSE, filed by Defendants on January 16, 2026) is pending before the United States Patent and Trademark Office. The prosecution history is as follows:

(a) On January 16, 2026, NEMO Arms, Inc. filed an application for the standard character mark MONGOOSE for "Firearms" (International Class 013), claiming first use "at least as early as 01/2024." The declaration was signed by Landon T. Laycock of Kirton McConkie under penalty of perjury.

(b) On February 12, 2026, the USPTO issued a Non-Final Office Action refusing the application on the ground that NEMO's specimen of use was "mere advertising" and failed to show the mark as "actually used in commerce."

(c) On April 3, 2026, Defendants filed a Response to Office Action submitting a new specimen: a screenshot from a third-party vendor website (notjustguns.com), accessed March 30, 2026, depicting a single unit of the "Nemo Arms MNG-9MM-C

1

Mongoose" listed at $4,397.63 with "Quantity on Hand: 1." The declaration was again signed by Landon T. Laycock under penalty of perjury.

The USPTO has been notified of this action (Dkt. 6). The application remains pending and unregistered.

**3.** *Briefly describe what this case is about.*

This is a trademark infringement, trade-secret misappropriation, and civil conspiracy action. Plaintiff Alan Blecher, a Texas-operating/based designer and manufacturer of high-performance firearm components, has used the arbitrary mark MONGOOSE in the ultra-lightweight firearms niche continuously since 2012. Defendant NEMO Arms, Inc., a Montana corporation, did not acquire any rights in the mark until at least January 2024, as stated by its counsel in a May 6, 2025 cease-and-desist letter.

Plaintiff alleges that after Defendants became aware of Plaintiff's senior priority, they did not seek coexistence or withdraw. Instead, Defendants' Executive Directorate (Defendants Link, Sipe, and King) assembled a "Crisis Management Team" that deployed a covert network of non-employee agents ("Agents A through H," collectively the "Shadow Nexus") against Plaintiff and his senior technical consultant. The agents posed as prospective sales representatives, attorneys, old friends, former employees, and a Turkish defense manufacturer. Their aim was to misappropriate Plaintiff's Confidential Sales Guidelines (trade secrets), to manufacture a regulatory dossier of ITAR and criminal-flight-risk leverage, and—through Agent H (BSDI, Black Sea Defence Industry)—to entrap Plaintiff into an unlicensed export of CAD data to Turkey in violation of the Arms Export Control Act. When Plaintiff demanded preservation of evidence regarding this "Third-Party Outreach," Defendants' counsel claimed Attorney Work Product privilege over said Third-Party Outreach.

Plaintiff brings seven counts: (I) Federal Trademark Infringement and False Designation of Origin (15 U.S.C. § 1125(a)); (II) Federal Trade Dress Infringement (15 U.S.C. § 1125(a)); (III) Texas Common-Law Unfair Competition; (IV) Declaratory Judgment of Priority and Non-Infringement (28 U.S.C. § 2201; 15 U.S.C. § 1119); (V) Misappropriation of Trade Secrets (TUTSA); (VI) Civil Conspiracy; and (VII) Director Personal Liability under the "Moving Force" doctrine.

Of particular relevance to this Court: the USPTO refused NEMO's trademark application on February 12, 2026, finding that NEMO's own evidence of use was "mere advertising" that failed to show the mark as "actually used in commerce." On April 3, 2026, Defendants filed a Response to Office Action submitting a substitute specimen—a screenshot from a single third-party vendor's website showing one unit on hand—while continuing to claim January 2024 first use under penalty of perjury, despite having been in possession of Plaintiff's 2012 priority evidence for nearly eleven months.

**4.** *Specify the allegation of federal jurisdiction.*

Federal question jurisdiction exists under 15 U.S.C. § 1121 (Lanham Act) and 28 U.S.C. §§ 1331 and 1338. Personal jurisdiction over NEMO Arms, Inc., is based on the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, through stream-of-commerce sales into the Southern District of Texas via authorized dealers. Personal jurisdiction over the Individual Defendants is based on the Calder "Effects Test" (intentional tortious conduct directed at Texas). Venue is proper under 28 U.S.C. § 1391(b)(2).

**5.** *Name the parties who disagree and the reasons.*

**Plaintiff's Position:** All named Defendants are properly before this Court. Personal jurisdiction over the Individual Defendants (Link, Sipe, King) is established under the Calder "Effects Test" based on intentional targeting of a Texas business/Plaintiff/operations through directed agents conducting investigations into Plaintiff's FFL, Certificate of Formation, and Texas-based operations and trade secrets.

**Defendants' Position:** Defendants have filed a Motion to Dismiss (Dkt. 28) asserting lack of personal jurisdiction over the Individual Defendants and failure to state a claim. Defendant Link has filed a separate Motion to Dismiss (Dkt. 35). Defendants have previously characterized the agent-network allegations as "speculative" and contest personal jurisdiction as to the Individual Defendants.

**6.** *List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.*

Plaintiff does not currently anticipate adding additional parties. However, Plaintiff expressly reserves the right to join additional conspirators "as discovery reveals the depth of the Shadow Nexus" (Complaint ¶ 110(a)) and to "join [the Agents] as Co-Defendants upon the discovery of evidence confirming that their participation in the scheme was willful, knowing, or compensated" (Complaint ¶ 110(b)).

**7.** *List anticipated interventions.*

None anticipated.

**8.** *Describe class-action issues.*

None. This is not a class action.

**9.** *State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.*

Initial disclosures under Rule 26(a) have not yet been exchanged. Plaintiff proposes that initial disclosures be exchanged within 30 days of the entry of the scheduling order.

**10.** *Describe the proposed agreed discovery plan, including:*

**A.** Responses to all the matters raised in Rule 26(f).

Plaintiff proposes a standard discovery process with a focus on forensic ESI (Electronically Stored Information) production, as described below. Plaintiff's

3

discovery strategy has two tracks: (1) the Priority Track (trademark use and priority evidence, 2012–2024), and (2) the Culpability Track (the alleged "Shadow Nexus" agent network, the Crisis Management Team, and post-C&D conduct).

**B.** When and to whom the plaintiff anticipates it may send interrogatories.

Plaintiff anticipates serving interrogatories on all Defendants (NEMO Arms, Inc., Link, Sipe, and King) within 45 days of the scheduling order. Plaintiff proposes a limit of 25 interrogatories per party, including sub-parts.

**C.** When and to whom the defendant anticipates it may send interrogatories.

Defendants' position on interrogatory timing is to be provided by Defendants' counsel.

**D.** Of whom and by when the plaintiff anticipates taking oral depositions.

Plaintiff anticipates 3–5 oral depositions, primarily of: (1) Defendant Kelly Link (CEO); (2) Defendant Jeff Sipe (Director/Executive Officer); (3) Defendant William King (former President/CEO); and (4) a Rule 30(b)(6) corporate representative of NEMO Arms, Inc. Plaintiff reserves the right to depose specific non-party agents (Agents A–H) only as required by forensic necessity should ESI discovery confirm their participation in the alleged tortious conduct. Plaintiff's depositions will be completed by January 2027.

**E.** Of whom and by when the defendant anticipates taking oral depositions.

Defendants' position on depositions is to be provided by Defendants' counsel.

**F.** When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.

Plaintiff's expert designations and reports: January 15, 2027. Defendants' responsive expert designations and reports: February 15, 2027.

**G.** List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date.

To be determined following expert designations. Plaintiff anticipates deposing Defendants' experts (if any) within 30 days of receiving reports.

**H.** List expert depositions the opposing party anticipates taking and their anticipated completion date.

Defendants' position is to be provided by Defendants' counsel.

**11.** *If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.*

The parties are not in agreement on the following:

**Forensic ESI Imaging.** *Plaintiff's Position:* Plaintiff requests a third-party forensic protocol for the preservation, imaging, and production of the Individual Defendants' personal and corporate devices and communication accounts to recover communications with Agents A–H. The basis for this demand is as follows: (a) the Complaint (at ¶¶ 186–194) alleges that when Plaintiff served a Specific Notice of Preservation on January 22, 2026, defining "Third-Party Outreach" and "Intelligence Gathering," Defendants' counsel responded by asserting Attorney Work Product privilege rather than certifying that the relevant communications were being preserved; (b) the temporal synchronization of agent activity to docket events (Complaint ¶¶ 164–166, 223–228) and the abrupt cessation of all agent outreach coincident with the Motion to Dismiss deadline (the "Silence Strike") create a reasonable inference that a centralized "Stop Order" was issued, which should be preserved on corporate or personal devices. Plaintiff is also aware of post-verification conduct, including a phishing attempt directed at Plaintiff on or about March 13, 2026, involving a tracking link embedded within sixteen layers of obfuscatory CSS — forensic indicia consistent with professionally directed surveillance rather than ordinary spam; and (c) the Complaint alleges the agents communicated through channels that standard document production will not capture, including signal, social media direct messages and telephonic communications (Complaint ¶¶ 138, 147, 157, 351).

*Defendants' Position:* Defendants have not provided their position on forensic ESI imaging. Defendants have previously characterized the Shadow Nexus allegations as "speculative" (see Dkt. 28).

**Stay of Discovery.** *Plaintiff's Position:* The preservation concerns described above are time-sensitive. Delay would provide a window during which the communications underlying this continuing activity could be lost or destroyed.

*Defendants' Position:* To be provided by Defendants' counsel.

12. *Specify the discovery beyond initial disclosures that has been undertaken to date.*

No formal discovery has been undertaken beyond the initial preservation correspondence described above (January 21–23, 2026 exchange).

13. *State the date the planned discovery can reasonably be completed.*

Plaintiff proposes that discovery be completed by March 1, 2027.

14. *Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.*

Plaintiff has previously proffered two settlement offers, which have since been withdrawn. Plaintiff remains willing to engage in good-faith settlement discussions by email or other suitable communication channel. No current settlement offer is pending.

15. *Describe what each party has done or agreed to do to bring about a prompt resolution.*

5

Plaintiff extended a "live and let live" coexistence offer on May 6, 2025, which Defendants did not respond to. Plaintiff subsequently proffered two formal settlement offers, both of which have been withdrawn. Defendants have not made any settlement proposals known to Plaintiff.

**16.** *From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.*

Plaintiff does not believe alternative dispute resolution is likely to be productive at this stage. The case involves allegations of ongoing harmful conduct that are unlikely to be resolved without full discovery. Plaintiff is not opposed to revisiting the question if circumstances change, but does not propose a mediation deadline at this time.

**17.** *Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.*

Plaintiff does not consent to trial before a magistrate judge. Defendants' position has not been provided.

**18.** *State whether a jury demand has been made and if it was made on time.*

Plaintiff has demanded a jury trial on all issues so triable. The demand was timely made in the First Amended Verified Complaint (p. 123).

**19.** *Specify the number of hours it will take to present the evidence in this case.*

Plaintiff estimates approximately 40 hours for the presentation of evidence.

**20.** *List pending motions that could be ruled on at the initial pretrial and scheduling conference.*

The following motions are pending:

- Defendants' Motion to Dismiss [Dkt. 28] (filed by NEMO Arms, Inc., Jeff Sipe, and William King).

- Defendant Kelly Link's Motion to Dismiss [Dkt. 35].

**21.** *List other motions pending.*

See Item 20 above. No additional motions are pending beyond those listed.

**22.** *Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.*

**A. Preservation Dispute Regarding the "Shadow Nexus" Communications.** The parties are in a potential preservation dispute regarding communications between Defendants and their alleged non-employee agents (Agents A–H, collectively the "Shadow Nexus"). The relevant facts are:

6

(1) On January 22, 2026, Plaintiff served Defendants' counsel with a Specific Notice of Preservation defining "Third-Party Outreach" and "Intelligence Gathering" to include communications with the alleged agents (Complaint ¶ 186).

(2) On January 22, 2026, Defendants' counsel responded with a redline asserting that any "Third-Party Outreach" materials would be "attorney work product" (Complaint ¶¶ 190–194). Counsel did not certify that the communications were being preserved.

(3) An Email sent by Counsel for Defendants to Plaintiff included the subject line: RE: Subject: Blecher v. NEMO Arms - Welcome & Notice of Preservation Dispute, Dkt 15. This, together with the assertion of work product, has led Plaintiff to interpret the work-product assertion as a confirmation of the existence of documents and communications responsive to the issue of Third Party Outreach and tortious actions, including surveillance, theft of trade secrets, and trademark infringement.

(4) This case also involves allegations of post-filing conduct, including a solicitation by Agent H (BSDI, Black Sea Defence Industry) at the January 2026 SHOT Show requesting that Plaintiff transmit CAD data and technical drawings to Turkey—which Plaintiff alleges was an attempted entrapment into an Arms Export Control Act violation (Complaint ¶¶ 210–215).

Plaintiff requests that the Court address the preservation dispute at the conference and consider entering a Forensic ESI Protocol as the first step of discovery to ensure the integrity of the agent-related communications.

**B. Ongoing USPTO Prosecution and the Integrity of the Pending Application.** On April 3, 2026, Defendants filed a Response to Office Action before the USPTO in connection with Application Serial No. 99/599,272 (MONGOOSE). The Response was signed by Landon T. Laycock of Kirton McConkie under penalty of perjury. The Court's attention is respectfully directed to the following:

(1) The original application was filed on January 16, 2026—eleven days after Plaintiff filed this action—and included a declaration that "no other persons … have the right to use the mark in commerce." At the time of that declaration, Defendants' counsel had been in personal possession of Plaintiff's 2012 priority evidence for over eight months (Complaint ¶¶ 83–84, 91).

(2) The USPTO refused the application on February 12, 2026, finding that NEMO's specimen of use was "mere advertising" and did not demonstrate that the mark was "actually used in commerce."

(3) Defendants' April 3, 2026 Response submits a substitute specimen: a screenshot from a third-party vendor's website (notjustguns.com, accessed just four days earlier on March 30, 2026) showing a single unit of a "Nemo Arms MNG-9MM-C Mongoose" firearm listed at $4,397.63, with "Quantity on Hand: 1." Despite claiming

7

first use in January 2024, the specimen's recency mirrors the deficiency the Examiner identified in the original filing. The April 3 declaration again attests under penalty of perjury that "no other persons … have the right to use the mark in commerce."

(4) Plaintiff respectfully submits that the ongoing prosecution of this application is relevant to Plaintiff's claims of willful infringement and improper registration under 15 U.S.C. § 1119.

**23.** *List the names, bar numbers, addresses and telephone numbers of all counsel.*

<u>**For Plaintiff:**</u>

Alan Blecher (Pro Se)

411 Walnut St, 19810
Green Cove Springs
FL, 32043

561-262-1948

alanblecher@gmail.com

<u>**For Defendants:**</u>

Landon T. Laycock

Larry R. Laycock

Kirton McConkie, LLP

2600 W. Executive Pkwy, Ste 400

Lehi, UT 84043

Tel: (801) 530-5722

Email: ipdocket@kmclaw.com; lrlaycock@kmclaw.com; llaycock@kmclaw.com; acall@kmclaw.com

_/s/ Alan P. Blecher_____        ____May 8, 2026____
Counsel for Plaintiff(s)                Date

8

9

_____    _____
Counsel for Defendant(s)                Date